Judgment rendered December 15 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,332-JAC

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA
IN THE INTEREST OF
E.J.

* * * * *

Appealed from the
Caddo Parish Juvenile Court
Parish of Caddo, Louisiana
Trial Court No. 159673A

Honorable David Neil Matlock, Judge

* * * * *

CINC APPELLATE PROJECT
By: Douglas Lee Harville

Counsel for Appellant,
T.J., Mother

GEORGE E. HARP

SARAH S. MIDBOE HOOD
Assistant District Attorney

Counsel for Appellee,
State of Louisiana DCFS

CHILD ADVOCACY PROGRAM
By: Reneé Paula Coté

Counsel for Appellee,
E.J., Child

MARK JOSEPH MICIOTTO

Counsel for Appellee,
D.J., Father

MARISSA WEBB

In Proper Person,
Appellee

* * * * *

Before GARRETT, STEPHENS, and ROBINSON, JJ.

**STEPHENS, J.**

The mother, T.J., appeals a judgment modifying a previous disposition from the Juvenile Court, Parish of Caddo, State of Louisiana, concerning the custody of the minor child, E.J.  For the reasons set forth below, we vacate that judgment of the juvenile court.

## FACTS AND PROCEDURAL HISTORY

This matter arises out of a motion for protective order filed by T.J. on behalf of her daughter, E.J., against E.J.'s father, D.J.  E.J. was born on October 27, 2016.  Her parents were married for a brief period of time but separated prior to the initiation of DCFS proceedings in juvenile court, which were prompted by allegations that T.J.'s boyfriend had abused E.J.  On December 17, 2018, E.J. was adjudicated a Child in Need of Care, and a judgment of disposition was rendered placing E.J. in the joint custody of T.J. and D.J., with T.J. designated the domiciliary parent and D.J. to have reasonable visitation.  On or about July 15, 2020, the district court ordered T.J. and D.J. to share custody of E.J. 50/50.[1]

Shortly thereafter, T.J. made allegations that D.J. had sexually abused E.J.  An instanter order was issued on August 4, 2020, placing E.J. in the temporary custody of the State.  The State subsequently filed a motion to modify disposition, and a hearing was held over several days, after which, on October 26, 2020, E.J. was placed back into the 50/50 custody of T.J. and D.J.  The court relieved DCFS and C.A.S.A., but maintained the case in juvenile court, declining, over the objection of E.J.'s attorney and the State,

---

[1] While that proceeding is separate and distinct from the instant one, it was referenced multiple times during the subsequent juvenile court proceedings and was evidently in conjunction with the finalization of T.J. and D.J.'s divorce.

to make its order subordinate to subsequent orders of a court of competent jurisdiction.

On or about April 1, 2021, T.J. filed the instant motion for protective order in juvenile court, requesting that for E.J.'s protection, either T.J. be granted sole custody of E.J. or E.J. be placed into in the care of the State. Apparently a hearing officer denied T.J.'s motion and set the motion for hearing with a second hearing officer who then referred the matter to the judge for a hearing since there was an open CINC case.[2] The hearing before the juvenile court began on May 3, 2021, and continued over several days, concluding on May 26, 2021. Although the motion for protective order is not contained in the record before us, according to T.J.'s testimony at the hearing, her motion contained the same, previously made allegations of sexual abuse of E.J. by D.J. that arose and were dispensed with in 2020, together with two new allegations: D.J. left bruises in the shape of fingerprints on E.J.'s bottom; and, E.J. told T.J. that D.J. had threatened to kill T.J. if E.J. reported the abuse.

The juvenile court elected to treat T.J.'s motion for protective order as a motion to modify judgment of disposition. During the hearing, T.J., D.J., and E.J. were each represented by counsel. The State and C.A.S.A. also participated. E.J. maintained her request that either she be granted sole custody of E.J. or E.J. be placed in the State's custody. D.J. sought sole custody. The State made no official recommendation regarding custody but noted law enforcement had investigated the allegations giving rise to the hearing, and based on their findings, the State had no concern for E.J.'s

_____

[2] The record before us does not contain the motion for protective order filed by T.J. or any official disposition of that motion.

2

safety. Accordingly, the State argued that as the case no longer involved abuse or neglect, it was simply a custody dispute, and urged the court to defer jurisdiction for future hearings to the district court.[3] Two C.A.S.A representatives testified, with one recommending E.J. be placed in foster care with neither parent having knowledge of her location, while the other recommended M.W., D.J.'s mother, receive sole custody. E.J.'s attorney opined that both parents loved E.J.; the child was safe in each of their care; while she was impressed with M.W., both parents have extended family who also love and care for the child; and, the orders need to protect each parent's rights to visitation and access to the child.

After arguments concluded, the juvenile court made the following oral ruling:

> The Court is modifying the disposition. I'm placing [E.J.] in the sole custody of [M.W.]. [M.W.] will have discretion to allow placement or visitation with either or both parents, and that is broad discretion. It extends to allowing you to have no visitation with a parent, supervised visitation, or placement in a parent's home.

The court further ruled its orders were to be subordinate to any court having competent jurisdiction. A judgment of modifying disposition in accordance with the court's oral ruling was rendered on June 3, 2021. This appeal by T.J. ensued.

Neither D.J. nor M.W. filed briefs in response. In its succinct brief, the State took no position on the judgment at issue and reurges the position it took in the juvenile court: as the matter does not involve a threat of abuse or neglect, it is purely a custody dispute, and the juvenile court should defer

---

[3] The assistant district attorney nevertheless expressed her personal opinion that the parents were putting their own drama ahead of what was best for the child and suggested that placement with M.W. was in the best interest of the child.

jurisdiction to the district court for any future hearing on the issue of custody.

## DISCUSSION

In her first assignment of error, T.J. asserts the juvenile court erred when it terminated her custody of E.J. and placed E.J. in the sole custody of M.W. when no party filed and served a written motion to modify judgment of disposition pursuant to La. Ch. C. arts. 714-715.

The purpose of Louisiana Children's Code Title VI, "Child in Need of Care," is to protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others. La. Ch. C. art. 601; *State in Int. of L.C.F. v. Futch*, 52,604 (La. App. 2 Cir. 4/10/19), 268 So. 3d 417, *writ denied*, 2019-0989 (La. 10/15/19), 280 So. 3d 559. The health, safety, and best interest of the child shall be the paramount concern in all proceedings under Title VI. La. Ch. C. art. 601; *State in Int. of A.H.*, 51,053 (La. App. 2 Cir. 9/28/16), 206 So. 3d 1081, *writ denied*, 2016-2017 (La. 1/9/17), 214 So. 3d 867.

The trial court may modify a judgment of disposition on its own motion or on the motion of the district attorney, the department, the child or his/her parents. La. Ch. C. art. 714. A judgment of disposition may be modified if the court finds that the conditions and circumstances justify the modification. La. Ch. C. art. 716. The burden of proving justification for modification of a custody disposition of a child earlier found in need of care is on the party who seeks to modify the disposition of custody. *State in Int. of K.K.*, 51,501 (La. App. 2 Cir. 8/9/17), 243 So. 3d 1155. Louisiana Ch. C. art. 715 governs service of a motion to modify and states:

4

A.  A copy of a motion to modify shall be served upon the child, his parent, the petitioner, and any person, institution, or agency to whom the custody of the child has been assigned.

B.  Service shall be in the manner provided for service of the petition.

The United States Supreme Court has declared it "plain beyond the need for multiple citation" that a biological parent's right to "the companionship, care, custody, and management" of his children is a liberty interest far more important than any property right.  *In re Adoption of B.G.S.*, 556 So. 2d 545, 549 (La. 1990), citing *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397, 71 L. Ed. 2d 599 (1982), and *Lassiter v. Dept. of Social Services of Durham County, N.C.,* 452 U.S. 18, 27, 101 S. Ct. 2153, 2160, 68 L. Ed. 2d 640 (1981).  Moreover, in *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), the court recognized the special liberty interest of parents in the care, custody, and control of their children as one of the oldest of the fundamental liberty interests protected by the Due Process Clause of the Fourteenth Amendment.

T.J. argues that since no party, or the juvenile court itself, filed and served a written motion to modify judgment of disposition in accordance with the requirements of La. Ch. C. arts. 714-715, there was no such motion on which the juvenile court could have properly ruled to serve as a basis for its June 3, 2021, judgment of modifying disposition.

It is undisputed there was no motion to modify disposition filed and served in this matter.  In fact, there was no motion, oral or written, that was filed into the record before us and served upon the parties that could possibly have been construed as seeking a modification of disposition.  We understand it might have on its face seemed reasonable for the hearing

5

officer assigned to the protective order hearing to refer the matter to the juvenile judge since there was an open CINC case, and we commend the juvenile court's initiative and effort to resolve the matter. Furthermore, we sympathize with the juvenile court judge, who has been dealing with the antics of these immature parents for three years. However, the fact remains—there was no motion to modify disposition filed and served in this matter. The juvenile court unilaterally, without any authority, determined the matter was to be treated as a motion to modify. The CINC case remained open following the 2020 hearing, so had any party or the court had good cause to seek a modification of disposition, they could have done so. That did not occur, undoubtedly because all parties were well aware this was purely a custody fight, and they had no grounds for requesting a modification of the disposition.

Notably, the assistant district attorney stated in the first moments of the hearing that the State had no safety concerns for the child. She further informed the court detectives had investigated the allegations which gave rise to the protective order and as a result, the detectives, and likewise the State, took the position that there was no current danger to the child. In urging the juvenile court to defer jurisdiction for future hearings to the district court, the State noted the the district court is well-equipped to handle problematic custody issues that arise in case like this, as the district court has custody evaluators and access to counselors, as does the juvenile court. Interestingly, similar arguments were made by the State and E.J.'s attorney (the same attorney who represented her in the instant matter) back in October 2020, when the juvenile court denied their request to make its judgment subordinate to future orders by a court of competent jurisdiction.

6

Both attorneys argued the matter no longer fell under the purview of CINC and was simply a custody fight that belonged in the district court because the child was safe in the custody of each of her parents and the parties would have access to sufficient resources in the district court, noting the district court had in fact already appointed its own expert on the case.

Granted, all parties were represented by counsel throughout the instant hearing, and no formal objection to the proceeding was made, but we note neither parent had anything to lose—they were each being given an additional shot at getting the custody arrangement they wanted. Regardless, the parties' acquiescence to the proceedings does not negate the fact that there was no motion to modify disposition filed and served in accordance with La. Ch. C. arts. 714-715. The juvenile court judge exceeded his authority by modifying the disposition without following proper procedure. We appreciate the purpose of the Louisiana Children's Code to protect children from physical and mental abuse and neglect, but we must likewise recognize the fundamental rights of parents. As the record clearly shows, these parents might be selfish and manipulative, but they are nonetheless entitled to the due process afforded them by La. Ch. C. arts. 714-715. T.J.'s motion for protective order was simply insufficient to put these parents on notice that the juvenile court judge would remove E.J. from their custody, place her in the custody of M.W., and bestow upon M.W. the absolute discretion to grant or deny T.J. and D.J. access to E.J. Accordingly, the juvenile court erred by deeming T.J.'s motion for protective order to be a motion to modify judgment of disposition, commencing the instant hearing, and entering the June 3, 2021, judgment modifying disposition. That judgment is vacated, custody of E.J. is returned to her parents, and the 50/50

arrangement that was in place prior to the filing and denial of T.J.'s motion for protective order is reinstated.

In additional assignments of error, T.J. asserts the juvenile court erred when: (1) even assuming her motion for a protective order could be construed as a written motion to modify judgment of disposition, it removed custody from T.J. instead of simply denying the relief she sought, and (2) it delegated M.W. the authority to "modify" custody to either parent without further court intervention. In light of the above holding pertaining to T.J.'s first assignment of error, her remaining assignments of error are pretermitted.

## CONCLUSION

For the foregoing reasons, the juvenile court's June 3, 2021, judgment of modifying disposition is vacated.

**VACATED.**

8